```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JULIO VALENTI, Executor of the
Estate of ANNA VALENTI, deceased,

                         Plaintiff
v.                                                  06-CV-6538T

TOMMY G. THOMPSON, as Secretary
of the Department of Health                         DECISION
and Human Services,                                 and ORDER

                         Defendant.
_____
```

Plaintiff, Julio Valenti, as Executor of the Estate of Anna Valenti ("Valenti"), brings this action[1] challenging the final determination of the Secretary of Health and Human Services ("HHS") denying Valenti's application for Medicare benefits. The Administrative Law Judge reviewing plaintiff's application determined that Valenti's condition, while a patient in Sisters Hospital in Buffalo, New York, following hip replacement surgery on September 5, 1996, did not require in-patient hospital services after September 26, 1996 and, therefore, she was not entitled to Medicare payments for services provided from September 26 through October 17, 1996. The Medical Appeals Council of the HHS declined to review this case and, therefore, the ALJ's decision became the "final determination" of the Secretary.

---

[1] This case (formerly Docket No. 01-CV-520A(S)) was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated October 26, 2006.

After reviewing the ALJ's decision and the record upon which it was decided, I find that the ALJ's determination is supported by substantial evidence in that record. I, therefore, grant the Secretary's motion to dismiss the complaint.

## DISCUSSION

Anna Valenti, then 88 years old, was admitted to Sisters Hospital in Buffalo, New York on September 5, 1996 after sustaining a hip fracture as the result of a fall. She underwent a right hip replacement and thereafter attended a program of physical therapy. The record further reveals that there were no complications nor other significant problems for the remainder of her hospitalization.

By mid-September 1996, medical records indicate that the Hospital considered Ms. Valenti to be recovered normally and ready for discharge. Physician notes indicate that on September 18, 19, and 20, Ms. Valenti was "doing well," that she was "awaiting placement" in a domiciliary facility and that "placement [is] in progress." (Tr. 109.)[2] The Hospital record also indicates that on September 20, 1996, Ms. Valenti's occupational therapist noted in the record that Valenti had insisted on nursing home placement, but that the therapist had "discussed [with] nursing that given [Valenti's] good functional abilities that a domiciliary would be a more appropriate placement." (Tr. 127.)

---

[2] Refers to Tr. indicates the record transcript number throughout.

In a letter dated September 23, 1996, Sisters Hospital issued a "continued stay denial notice" and Valenti acknowledged by her signature, that she had received a copy thereof.  (Tr. 369-70.) The letter put Valenti on notice that after a careful review of her record "the Hospital has determined, and your attending physician has agreed, that you no longer require a level of care covered by the Medicare program and you are ready for . . . custodial nursing home care."  (Tr. 369.)  In short, the notice informed Ms. Valenti that Medicare would no longer pay for her hospital stay as of September 26, 1996.

Based on the well documented Hospital records and attending physician evaluation, Valenti was eventually discharged from the Hospital to Bristol Home, described as a "domiciliary" by both of Ms. Valenti's physicians.

The Hospital records subsequent to September 26, 1996, indicate that Valenti's condition was stable and there was no indication of any ancillary health problems requiring continued Hospital care.  The Administrative Law Judge correctly concluded, based upon the Hospital record, that as of September 26, 1996, Valenti was receiving only custodial care.  Custodial care is clearly excluded from coverage under the Medicare program and the ALJ correctly concluded that the beneficiary of the estate is financially responsible for the cost of the non-covered services during the period September 26, 1996 through October 17, 1996. This conclusion was supported by substantial evidence in the

record. The record also shows that Valenti was furnished an appropriate notification concerning her Medicare coverage status on September 23, 1996 from Sisters Hospital. Thus, the ALJ correctly concluded, based upon the evidence in the record, that as of September 26, 1996, Valenti was aware that the in-patient hospital care was "not covered."

## CONCLUSION

For the reasons stated above, I conclude that the ALJ properly determined that Anna Valenti was not entitled to Medicare coverage for the period from September 26, 1996 through October 17, 1996. Accordingly, I grant defendant's motion for judgment on the pleadings, deny plaintiff's motion for judgment on the pleadings, and dismiss plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

\_\_\_\_S/Michael A. Telesca
_____
     MICHAEL A. TELESCA
United States District Court Judge

DATED:   Rochester, New York
         November 1, 2006